<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ESVIN QUINONEZ MAZARIEGOS, | Civil Action No. 12-5626 (FLW) |
| Plaintiff, | |
| v. | **OPINION** |
| MONMOUTH COUNTY CORRECTIONAL INSTITUTION, et al., | |
| Defendants. | |

**APPEARANCES**:

> ESVIN QUINONEZ MAZARIEGOS, #63618-050
> FCI Fairton
> P.O. Box 420
> Fairton, NJ 08320
> Plaintiff *Pro Se*

> MITCHELL B. JACOBS, ESQ.
> PAUL L. LASALLE, ESQ.
> Cleary Giacobbe Alfieri Jacobs, LLC
> 5 Ravine Drive
> Matawan, NJ 07747
> Attorneys for Defendants Monmouth County, Brian Elwood, Christopher Dixon

> MELISSA J. BROWN, ESQ.
> Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
> 6981 N. Park Drive
> Pennsauken, NJ 08109
> Attorneys for Third Party Defendant Correct Care Solutions, LLC

<u>**WOLFSON, District Judge**</u>:

Esvin Quinonez Mazariegos, who is currently confined at FCI Fairton in New Jersey, filed

a paid Complaint and Amended Complaint concerning injuries he sustained during an attack by

gang members while he was confined as a pretrial detainee at Monmouth County Correctional

Institution ("MCCI").   Presently before the Court are a motion to dismiss or, alternatively, for summary judgment filed by Third Party Defendant Correct Care Solutions, LLC ("CCS"), a motion to dismiss or, alternatively, for summary judgment filed by Monmouth County, Monmouth County Correctional Institution ("MCCI"), Warden Brian Elwood, and MCCI Corrections Officer Christopher Dixon ("the County Defendants"), and Plaintiff's opposition to these motions and his request for appointment of counsel.   For the reasons expressed below and pursuant to Rule 78 of the Federal Rules of Civil Procedure, this Court will deny the motion filed by CCS to dismiss or, alternatively, for summary judgment without prejudice; deny the motion to dismiss or, alternatively, for summary judgment filed by the Monmouth County Defendants without prejudice; after screening pursuant to 28 U.S.C. § 1915A(a), dismiss the 42 U.S.C. § 1983 failure to protect claim without prejudice against Monmouth County, Brian Elwood, Classification Officer John Doe, Dr. John Doe, Nurse Jane Doe, and Nurse John Doe; allow the § 1983 failure to protect claim to proceed past dismissal against Christopher Dixon; dismiss the § 1983 inadequate medical care claim without prejudice against Christopher Dixon and Classification Officer John Doe; allow the § 1983 failure to protect claim to proceed past dismissal against Monmouth County, Brian Elwood, Dr. John Doe, Nurse Jane Doe, and Nurse John Doe; and appoint counsel for Plaintiff, subject to his filing, and this Court's granting, his application to proceed *in forma pauperis, see* 28 U.S.C. 1915(e)(1).

## I.  BACKGROUND

On July 15, 2011, federal officials arrested Plaintiff pursuant to an arrest warrant and federal criminal complaint charging him with illegal reentry by an alien who was deported from the United States.   *See United States v. Quinonez-Mazariegos,* Crim. No. 12-0467 (MLC) (D.N.J.

filed July 12, 2012).   On July 2, 2013, pursuant to a plea agreement, Plaintiff pled guilty to one

count of being an alien who knowingly entered the United States after being deported, in violation

of 8 U.S.C. § 1326(a) and (b)(2).   On October 9, 2013, Plaintiff was sentenced to a 51-month term

of imprisonment.

In the meantime, on August 27, 2012, while Plaintiff was being held as a pretrial detainee

at the MCCI in Freehold, New Jersey, he signed the Complaint in this action.   (ECF No. 1.)   The

initial Complaint names only MCCI as defendant.   Plaintiff alleges in the Complaint that, while

he was detained at MCCI, he was attacked by inmates and his eyes were "severely damaged."

(ECF No. 1 at 5.)   He asserts that, although doctors were supposed to monitor his eye, he received

no follow-up medical care for seven months.   He alleges that when he was ultimately examined

by an eye doctor, the doctor "told me I had glaucoma from trauma."   *Id.*

By Order entered September 13, 2012, this Court administratively terminated the case

because Plaintiff had not prepaid the $350 filing fee or applied to proceed *in forma pauperis*,

pursuant to 28 U.S.C. § 1915.   (ECF No. 2.)   On October 1, 2012, Plaintiff paid the filing fee and

the Clerk filed the Complaint.   (ECF No. 3.)   On January 28, 2013, Plaintiff signed, and

presumably handed to jail officials for mailing to the Clerk, a document labelled motion to

supplement the complaint.   (ECF Nos. 4, 6.)[1]   The body of this motion contains what appears to

be an Amended Complaint naming MCCI Warden Brian Elwood, MCCI Corrections Officer

Dixon, Classification Officer John Doe, Doctor John Doe, Nurse John Doe, and Nurse Jane Doe.

*Id.*   As no responsive pleading had been filed at the time Plaintiff sought to amend the Complaint,

---

[1] The motion was docketed as ECF No. 4, and the identical motion was docketed again on
February 11, 2013, as ECF No. 6.

*see* Fed.R.Civ.P. 15(a)(1)(B), on March 21, 2013, this Court granted the motion to amend the Complaint and deemed ECF No. 6 to be Plaintiff's Amended Complaint.   (ECF No. 7.)

Plaintiff, who is *pro se*, sets forth additional facts in the Amended Complaint.   (ECF No. 6.)   He alleges that while he was incarcerated at MCCI in 2011, he informed Correction Officer Dixon that certain gang members had threatened his life, but "nothing was done to investigate" the threat and his "pleas for help w[ere] ignored."   (ECF No. 6 at 3.)   Plaintiff alleges that on October 7, 2011, while he was housed with county and state inmates in the maximum security unit of the jail, several "Surenos-13 gang members" assaulted him for over six minutes.   *Id.*   He asserts that, "[w]hile plaintiff was being attacked and beat[en], defendant Di[xon] was nowhere to be found," and Officer Valentino eventually called the code.   *Id.*   Plaintiff alleges that he was taken to a hospital by ambulance and he had severe injuries to his eyes and on his torso, stomach, chest, arms, and back.   In addition, he contends that Defendants Warden Elwood and Classification Officer John Doe "were aware that [MCCI] ha[d] a gang problem, and they [took] no corrective action to control and/or abide by State Administrative Regulations regarding gang control."   *Id.*

Plaintiff further asserts that Defendant Doctor John Doe "refused to provide plaintiff with any aftercare treatment, pain medication and [an] eye doctor referral to determine the extent of [his] eye injury," and Nurses John Doe and Jane Doe "refused to place plaintiff's name [on] the sick call list" and ignored his requests for medical treatment.   (ECF No.  6 at 4.)   Plaintiff alleges that after seven months, he "was finally sent to see an eye specialist who diagnosed [his] eye injury as glaucoma due to the trauma from being assaulted and beat[en]."   *Id.*   He states that he now "has a permanent eye injury as a direct result [of] the delay in providing [him] with

specialist medical care." *Id.*  For violation of his rights, he seeks injunctive relief and damages. *Id.* at 5.

The Monmouth County Defendants filed an Answer substantially denying Plaintiff's allegations and raising several affirmative defenses, as well as filing a Third Party Complaint against Correct Care Solutions, LLC.   (Answer and Third Party Complaint, ECF No. 17.)   In the Third Party Complaint, the County Defendants assert that CCS contractually agreed to hold the County and its employees harmless for claims arising out of the provision of medical care to inmates at MCCI.  *Id.*   In response to the Third Party Complaint, CCS filed a motion to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted or, alternatively, for summary judgment.  (ECF No. 22-4.)   CCS, further, moved to dismiss the Third Party Complaint against it as moot.  *Id.*   The County Defendants thereafter filed a cross motion to dismiss the Amended Complaint or, alternatively, for summary judgment, which substantially mirrors CCS's motion.   (ECF No. 28.)

Plaintiff, who is now a federally sentenced inmate confined at FCI Fairton in New Jersey, filed a certification and several letters in opposition to these motions, wherein he repeatedly asked this Court to appoint counsel.   (ECF Nos. 27, 29, 30, 31.)   Plaintiff argues that the Court should not dismiss his Amended Complaint until he has been able to obtain the facility's video of the attack, other discovery, and an attorney to represent him in this action; that Correction Officer Dixon is liable because he failed to respond reasonably when Plaintiff complained about the threats made to his safety from the gang members who later attacked him; and that, as a result of the incident, Plaintiff is now blind in his left eye and losing vision in his right eye.   (ECF No. 27 at 3.)   In his letter dated October 28, 2013, Plaintiff states that he has not yet received from the

County Defendants the video, photographs, reports, and log book, which he attempted to subpoena; that on February 17, 2013, an optometrist recommended that Plaintiff see a specialist "as soon as possible because he couldn't control [Plaintiff's] eye pressure;" that Plaintiff filed several requests and grievances because he was experiencing blurriness in the left eye; that his left eye went blind on April 15, 2013; and that he needs the assistance of counsel.   (ECF No. 30 at 2.)

## II.   DISCUSSION

A.   Defendants' Hybrid Motions

Defendant CCS filed what it calls a "Motion to Dismiss the Amended Complaint of Plaintiff and the Third Party Compliant of Defendants/Third Party Plaintiffs or, Alternatively, for Summary Judgment."   (ECF No. 22 at 1.   Without providing further detail in the motion, CCS states that it seeks, "pursuant to Fed.R.Civ.P. 12(b)(6), for an Order dismissing the Amended Complaint of Plaintiff and the Third Party Complaint of Defendants/Third Party Plaintiffs for failure to state a claim or, alternatively, for summary judgment."   *Id.*   Similarly, the County Defendants' motion is labelled "Cross-Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment."   (ECF No. 28 at 1.)   In the body of this motion, the County Defendants move, "pursuant to Fed.R.Civ.P. 12(b)(6), for an Order dismissing Plaintiff's Amended Complaint for failure to state a claim or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56."   *Id.*   This Court will review the applicable court rules and case law to determine whether such motions comply with the rules and are proper where the plaintiff is a *pro se* prisoner.

Rule 12(b)(6) authorizes a party to assert the defense of "failure to state a claim upon which relief can be granted" by motion, and provides that a motion asserting this defense "must be made"

before filing an answer, if a responsive pleading is allowed.   Fed.R.Civ.P. 12(b)(6).   Rule 12(g), entitled "Joining Motions," provides that "[a] motion under this rule may be joined with any other motion allowed by this rule."   Fed. R. Civ. P. 12(g)(1).   Rule 56 authorizes a party to file a summary judgment motion at any time until 30 days after the close of discovery, *see* Fed. R. Civ. P. 56(b), provided the motion identifies each claim, or part of each claim, on which summary judgment is sought.   *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought").   Rule 12(d) allows a district court to convert a motion under Rule 12(b)(6) to a summary judgment motion under limited circumstances after notice to the non-moving party. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.   All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion").

The Monmouth County Defendants filed their motion to dismiss or for summary judgment *after* filing an Answer.   This implies that the County Defendants' motion is brought under Rules 12(c) and 56,[2] but none of the Defendants have adequately supported a Rule 56 motion.   In addition, neither motion complies with the procedural requirements of Rule 56.   For example, the motions do not identify each claim or defense – or the part of each claim or defense – on which

---

[2]   A Rule 12(b)(6) motion must be made before filing an answer.   *See* Fed.R.Civ.P. 12(b).   Rule 12(c) authorizes a party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.   *See* Fed. R. Civ. P. 12(c).   In deciding a Rule 12(c) motion, a court employs the same standard applicable to dismissals for failure to state a claim under Rule 12(b)(6).   *See Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012); *Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010); *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); 2-12 Moore's Federal Practice – Civil § 12.38; Fed. R. Civ. P. 12(h)(2)(B).

summary judgment is sought, as required by Rule 56(a), and Defendants have not supported their factual assertions by citing to depositions, affidavits, admissions, interrogatory answers, or other materials in the record, as required by Rule 56(c)(1)(A).

Compliance with the notice requirements of Rules 12 and 56 is particularly important where the plaintiff is a *pro se* prisoner.   *See Renchenski v. Williams*, 622 F.3d 315, 340-41 (3d Cir. 2010).   In *Renchenski*, the Third Circuit instructed "State and Federal Governments, as well as our district courts, [to] work together to ensure *pro se* prisoner-plaintiffs receive adequate notice of an imminent motion for summary judgment."   *Renchenski*, 622 F.3d at 340-41.   To this end, *Renchenski* requires the following notice for *pro se* prisoners when the court converts a Rule 12(b)(6) motion to a Rule 56 motion:

> We agree with the majority of our sister circuits that adequate notice in the pro se prisoner context includes providing a prisoner-plaintiff with a paper copy of the conversion Order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56(f) affidavit.

*Renchenski*, 622 F.3d at 340 (footnote omitted).

The *Renchenski* Court cited several decisions of sister circuits with approval, including *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir. 1982).   In *Lewis v. Faulkner*, the district court dismissed a *pro se* prisoner's civil rights complaint where, instead of filing an answer, defendants filed "something called 'Motion To Dismiss, Or In The Alternative, For Summary Judgment.'" *Id.*   The Seventh Circuit reversed the district court's order of dismissal on the ground that "a prisoner who is a plaintiff in a civil case and is not represented by counsel is entitled to receive notice of the consequences of failing to respond with affidavits" to a hybrid motion to dismiss or for summary judgment.   Id. at 102.   As the Seventh Circuit explained:

> The lack of explicit notice would not be troubling if it were obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial.   But this aspect of federal civil practice is contrary to lay intuition, which is that the first step in a civil litigation is the filing of a complaint, the second the filing of an answer, and the third the trial of the case. The defendants here filed no answer.   Their first pleading was the motion.   It would not be realistic to impute to a prison inmate . . . an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature, on affidavits, so that not submitting counter affidavits is the equivalent of not presenting any evidence at trial.   We credit the plaintiff with knowing that if his case was tried and he failed to present evidence he would lose . . . .   But we do not think he can be charged with the further knowledge that a failure to offer affidavits when his opponent files something called "Motion to Dismiss, Or In The Alternative, For Summary Judgment" is an equivalent default.

*Lewis*, 689 F.2d at 101.

Applying *Lewis*'s rationale here, this Court finds that Defendants' hybrid motions did not provide clear notice to the prisoner *pro se* Plaintiff here regarding his obligation to defend a summary judgment motion.   *See Lewis,* 689 F.2d at 101; *Visintine v. Zickefoose,* Civ. No. 11-4678 (RMB), 2012 WL 6691783 (D.N.J. Dec. 21, 2012); *Potter v. Glover,* Civ. No. 09-4304 (WJM) slip op. at ECF No. 77, pp. 5-9 (D.N.J. Nov. 13, 2012).[3]   It follows from *Renchenski* and Rules 12 and 56 that, where the plaintiff is *pro se*, a defendant should avoid filing a hybrid motion to dismiss that does not comply with the governing rules, and which creates unnecessary confusion for a *pro se* litigant, as is evident from Plaintiff's letters in this case.[4]   This Court will deny

---

[3] *See also Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012) (specifying contents of notice and holding that notice must be provided at the time the summary judgment motion is made); *Bryant v. Madigan*, 91 F.3d 994 (7th Cir. 1996) (finding notice provided confusing and inadequate).

[4] Not only are the standards for a Rule 12(b)(6) and a Rule 56 motion entirely different, but the need to respond to such motions differs.   *See Curtis v. Bembenek*, 48 F.3d 281, 287 (7th Cir. 1995)   ("a *pro se* plaintiff who has alleged well-pled facts supporting a claim for relief can withstand dismissal without responding to a motion to dismiss . . . .   Unlike the summary

Defendants' hybrid motions without prejudice for failure to comply with Rules 12 and 56, and as inconsistent with the reasoning of *Renchenski*.  *See Lewis*, 689 F.2d at 101; *Visintine*, 2012 WL 6691783; *Potter*, Civ. No. 09-4304 (WJM) slip op. at ECF No. 77, pp. 5-9.

Even if the Court were to consider Defendants' motions to dismiss on the merits, this Court would not dismiss the Amended Complaint in toto.  As illustrated below, several of Plaintiff's claims withstand *sua sponte* screening under 28 U.S.C. 1915A, which is governed by the same standard as that applicable to motions to dismiss made pursuant to Rule 12(b)(6). [5]  Only certain of Plaintiff's claims against certain Defendants warrant dismissal without prejudice under this standard.

**B.    Screening Under 28 U.S.C. § 1915A**

Where "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," federal law requires a district court to screen the complaint to identify cognizable claims, and to dismiss any claim that "fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(a), (b)(1).  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915A(a) because Plaintiff is a prisoner within 28 U.S.C. § 1915A(c)[6] and he "seeks redress from a governmental entity," 28 U.S.C. 1915A(a).[7]

---

judgment context, the nonmovant's lack of response to a motion to dismiss constitutes no admission of the proponent's factual assertions").

[5] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 Fed. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)).

[6] *See* 28 U.S.C. § 1915A(c) ("[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for,

"[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).   Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."   *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).   In deciding dismissal under the Rule 12(b)(6) standard, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

C.   <u>Federal Jurisdiction</u>

Federal courts are courts of limited jurisdiction.   *See Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 383 (1884).   "[T]hey have only the power that is authorized by Article III of the

---

violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").   Plaintiff was a pretrial detainee or non-sentenced detainee during the time period covered by the Amended Complaint.

[7] This Court did not screen the Amended Complaint under § 1915A previously because Plaintiff characterized himself as an immigration detainee.   (Order, ECF No. 7.)   This Court discovered Plaintiff's criminal prosecution only after he was transferred to FCI Fairton and filed a notice of change of address.

Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986).   Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.   To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.   *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Pursuant to the requirements of 28 U.S.C. § 1915A(b), this Court construes Plaintiff's Amended Complaint as raising the following claims under 42 U.S.C. § 1983:  (1) failure to protect Plaintiff from a serious risk to his safety, in violation of the Due Process Clause of the Fourteenth Amendment, against Defendants Monmouth County,[8] MCCI Warden Elwood, MCCI Corrections Officer Dixon, and MCCI Classification Officer John Doe, and (2) deliberate indifference to Plaintiff's serious medical needs, also in violation of the Due Process Clause of the Fourteenth Amendment, against Monmouth County, Warden Elwood, Doctor John Doe, Nurse Jane Doe, and Nurse John Doe.

(1) Failure to Protect

Pretrial detainees are protected from punishment without due process of law under the Fourteenth Amendment.   *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Bistrian v. Levi*, 696 F.3d

---

[8] While Plaintiff names MCCI as Defendant, this Court construes the proper defendant to be Monmouth County, as did the County Defendants in their Answer.

352, 373-74 (3d Cir. 2012).   That inquiry generally involves application of the Eighth Amendment deliberate indifference standard, insofar as "the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).   "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm."   *Bistrian*, 696 F.3d at 367; *accord Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).[9]   Deliberate indifference is a subjective standard:   "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."   *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).   "It is not sufficient that the official should have known of the risk.   A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety 'in the usual ways, including inference from circumstantial evidence.'   In other words, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Bistrian*, 696 F.3d at 367 (quoting *Farmer*, 511 U.S. at 842).

Applying *Iqbal's* plausibility standard and the above constitutional standard to Plaintiff's allegations concerning the attack on October 7, 2011, this Court finds that Plaintiff plausibly states a due process failure to protect claim against Defendant Corrections Officer Dixon.   Plaintiff alleges

---

[9] *See also Ortiz v. Jordan*, 131 S.Ct. 884, 893 (2011) (noting that a prison official may be held liable under § 1983 "for 'deliberate indifference' to a prisoner's Eighth Amendment right to protection against violence while in custody if the official 'knows that [the] inmat[e] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.") (quoting *Farmer v. Brennan*, 511 U.S. 824, 834, 847 (1994) (internal quotation marks omitted)).

facts indicating that he was incarcerated under conditions posing a substantial risk to his safety, as he asserts that the gang members who attacked him had previously threatened him.   Plaintiff adequately pleads that Defendant Dixon was deliberately indifferent to that risk, in that Plaintiff alleges that "[p]rior to this assault, plaintiff informed defendant Di[xon] that his life was threatened by these same gang members, [but] nothing was done to investigate pursuant to applicable policy and procedure [and] plaintiff's pleas for help w[ere] ignored."  (ECF No. 6 at 3.)  And it can be inferred from the allegations in the Amended Complaint that Dixon's alleged failure to reasonably respond to the known threat to Plaintiff's safety caused the harm that occurred, *i.e.,* the gang members who threatened Plaintiff later attacked and severely injured him.   This Court will not dismiss the § 1983 failure to protect claim against Dixon for failure to state a claim. [10]

Nevertheless, relying on *Knox v. Doe,* 486 F.App'x 725 (3d Cir. 2012), Defendant Dixon argued in his motion that "Plaintiff cannot state a claim for deliberate indifference against Defendant, Christopher Dixon based upon a mere allegation that at an unknown date prior to the alleged assault, Plaintiff informed Defendant Dixon that he was threatened by gang members."

---

[10]  In the brief supporting his motion, Dixon states that "there exist[] no facts that Plaintiff attempted to exhaust the MCCI's grievance procedure contained within the MCCI Handbook with respect to his alleged grievance concerning his classification within the MCCI.   Therefore, there do[] not exist sufficient facts to state a failure-to-protect claim."  (ECF No. 28-2 at 15.)   This Court will not dismiss Plaintiff's § 1983 claims pursuant to Rule 12(b)(6) based on the affirmative defense of failure to exhaust available administrative remedies, *see* 42 U.S.C. § 1997e(a), as it is not Plaintiff's burden to plead exhaustion.   *See Jones v. Bock,* 549 U.S. 199, 216 (2007); *Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir. 2002).   In addition, as previously explained *see, supra* at pp. 6-10, Defendants have not properly moved for summary judgment.   Even if Defendants' motion had complied with the procedural requirements of Rule 56, they failed to carry their burden of production, as they filed no affidavit establishing the failure to exhaust available administrative remedies.   *See Brown v. Croak,* 312 F.3d 109, 111 (3d Cir. 2002) (noting that failure to exhaust administrative remedies under § 1997(e) "is an affirmative defense which must be pled and proven by the defendant.")

(ECF No. 28-2 at 14.)   *Knox* is distinguishable.   In that case, Knox merely "alleged that he sent a request slip to a[n unspecified] prison official in April 2009 stating that 'someone in the jail' was going to hurt him," and he claimed that "several unnamed prison employees acted with deliberate indifference by failing to prevent the attack."   *Knox,* 487 F.App'x at 727.   Plaintiff's allegations regarding Dixon are much more detailed than those in *Knox*.   Plaintiff was detained at the jail on or about July 15, 2011; he alleges that he was attacked less than three months later on October 7, 2011, and that he informed Dixon, prior to the assault, that his life was threatened by the same gang members who attacked him, but Dixon did nothing to investigate and ignored Plaintiff's "pleas for help."   (ECF No. 6 at 3.)

The Amended Complaint does not plead facts showing that Warden Elwood or Classification Officer John Doe were deliberately indifferent to the risk to Plaintiff's safety posed by the gang members who attacked him.   Plaintiff asserts that Elwood and the Classification Officer "were aware that [MCCI] ha[d] a gang problem," that they did not take corrective action, and that Plaintiff was housed "with county and state inmates in violation of State and Federal law."   (ECF No. 6 at 3.)   But, unlike his allegations with respect to Dixon, Plaintiff does not assert facts showing how Warden Elwood and the Classification Officer (1) became aware of the gang problem and (2) became aware that Plaintiff was at risk.   In the absence of such allegations, the Amended Complaint does not plausibly plead a failure to protect claim against Elwood and the Classification Officer in their individual capacities.   The § 1983 failure to protect claim will be dismissed without prejudice against Defendants Elwood and Classification Officer Doe.

Nor does Plaintiff assert facts showing that, to the extent that the Warden was a policymaker for the County and that Elwood had a custom or policy of housing federal pretrial detainees with "county and state inmates," this custom or policy was the cause of the attack upon Plaintiff.

15

Accordingly, the failure to protect claim under § 1983 will be dismissed without prejudice against Monmouth County.[11]

(2) Deliberate Indifference to Serious Medical Needs

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*"  *Batts v. Giorla,* C.A. No. 13-1926, --- F.App'x ---, 2013 WL 6824930, at *2 (3d Cir. Dec. 27, 2013) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)).   In this case, Plaintiff does not assert facts in the Amended Complaint showing that Corrections Officer Dixon or Classification Officer John Doe had any involvement in providing or determining the medical care that Plaintiff received while he was confined at MCCI.   Accordingly, this Court will dismiss Plaintiff's § 1983 medical care claim without prejudice as against Defendants Dixon and Classification Officer Doe for failure to state a claim upon which relief may be granted.

───────────────

[11]  A local government unit, such as Monmouth County, cannot be found liable under 42 U.S.C. § 1983 simply because it employs a wrongdoer.   *See Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691-92 (1978); *Natale v. Camden County Correctional Facility,* 318 F.3d 575, 583 (3d Cir. 2003); *see also Carver v. Foerster,* 102 F.3d 96, 102-105 (3d Cir. 1996) (holding that a county is a local government unit under *Monell*).   In order for a local government entity to be found liable under § 1983, the plaintiff "must identify a custom or policy," "specify what exactly that custom or policy was," *McTernan v. City of York, PA,* 564 F. 3d 636, 658 (3d Cir. 2009), and specify facts showing a "direct causal link between a [local government] policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc.,* 503 F. 3d 247, 249 (3d Cir. 2007) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)).   The Amended Complaint is devoid of any allegations showing that a policy or custom of Warden Elwood or Monmouth County to house federal pretrial detainees with county and state prisoners caused the injuries Plaintiff sustained from the attack.   Because the Complaint fails to specify how a custom or policy of Warden Elwood (if he was a policymaker for MCCI) or Monmouth County caused the violation of Plaintiff's constitutional rights, as written, it fails to state a failure to protect claim under § 1983 against the County.   The failure to protect claim is dismissed without prejudice against the County.

Plaintiff also sues Warden Elwood, Dr. John Doe, and Nurses John and Jane Doe for inadequate medical care.   Courts generally "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment[,] which remains a question of sound professional judgment."   *Batts* at *2 (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (internal alterations, quotation marks omitted)).   Moreover, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference."   *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004).   However, the facts in this case are distinguishable from these holdings.   In response to Defendants' motions, Plaintiff asserts that he

> lost [his] left eye due to slow treatment and medical assistance.   On 2/17/13 I was recommended by an optometrist to see a specialist as soon as possible because he couldn't control my eye pressure.   After a month went by I filed several requests because I was having strong blurriness in my left eye.   Nothing was done.   On 4/15/13 my left eye went completely blind.   I have copies of my medical records. I have the recommendation letter and request forms.   As well as a grievance from when all this was happening.

(Letter to Court dated Oct. 28, 2013, ECF No. 30 at 2.)

Plaintiff asserts, and this Court's docket confirms, that Plaintiff was sentenced on October 9, 2013.   (ECF No. 30 at 1; *United States v. Quinonez-Mazariegos,* Crim. No. 12-0467 (MLC) minute entry (D.N.J. Oct. 9, 2013).   One can plausibly infer that Plaintiff was detained at MCCI from his arrest on July 15, 2011, until at least October 9, 2013.   Since Plaintiff asserts that on February 17, 2013, an optometrist determined that he needed to be seen by a specialist as soon as

possible because the optometrist could not control his eye pressure,[12] it follows that the alleged failure of Defendant Dr. John Doe and the Defendant Nurses John and Jane Doe to provide a consultation with a glaucoma specialist for months (which delay allegedly caused Plaintiff's blindness in one eye by April 15, 2013) sufficiently pleads deliberate indifference, *i.e.* the refusal to provide prescribed treatment,[13] rather than the exercise of independent professional medical judgment.[14]   This Court finds that the Amended Complaint, when read in the context of Plaintiff's supplemental allegations, adequately pleads a claim of deliberate indifference to Plaintiff's serious medical need for the timely care of an appropriate specialist to treat his trauma-induced glaucoma

---

[12]  Plaintiff further asserts that Defendant Doctor John Doe "refused to provide plaintiff with any aftercare treatment, pain medication and [an] eye doctor referral to determine the extent of [his] eye injury," and Nurses John Doe and Jane Doe "refused to place plaintiff's name [on] the sick call list" and ignored his requests for medical treatment.   (ECF No. 6 at 4.)

[13]  "[I]ndifference . . . manifested by prison doctors in their response to the prisoner's needs . . . states a cause of action under § 1983."   *Estelle v. Gamble,* 429 U.S. 97, 104-105 (1976).   "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."   *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009).   Deliberate indifference has been found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment.   *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[14]  While this Court does not rely on the following medical information in this Opinion, Plaintiff's allegations regarding the development of glaucoma and blindness are consistent with the condition known as traumatic glaucoma.   *See, e.g.,* University of Texas Southwestern Medical Center, http://www.utswmedicine.org/conditions-specialties/eyes/glaucoma/traumatic-glaucoma.html (last accessed Mar. 19, 2014). ("Sometime after trauma to the eye or a head injury, the angle – the area where the iris and the cornea come together – begins to narrow or close.   This condition is called angle recession.   Since the angle allows fluids in the eye to drain, a narrow or closed angle causes pressure to build inside the eye.   Traumatic glaucoma eventually develops in up to 20 percent of cases of angle recession.   Left unchecked, high pressure in the eye damages the optic nerve and causes vision loss or blindness.")

against Defendant Dr. John Doe and Defendant Nurses John Doe and Jane Doe.[15] [16] This Court will direct the Clerk to file Plaintiff's letter dated October 28, 2013, as a Supplemental Complaint. (ECF No. 30 at 2.)

In addition, as Plaintiff asserts that he submitted a grievance complaining that jail medical personnel were mistreating or not treating his loss of vision, it can be plausibly inferred that this grievance went to Warden Elwood, who failed to reasonably respond to an inmate's serious complaint of blindness due to the mistreatment or failure to provide any treatment by contract providers of his trauma-induced glaucoma.  This Court finds that the Amended Complaint, as supplemented by Plaintiff's letters, adequately asserts facts plausibly showing that Warden Elwood was deliberately indifferent to the mistreatment or failure to provide treatment for Plaintiff's progressive blindness under the holding of *Spruill*.

---

[15] Since Plaintiff does not know the names of the doctor and nurses, and he is no longer incarcerated at MCCI, this Court will direct the attorney for Monmouth County and Warden Elwood to provide Plaintiff with the names of the doctors and nurses at MCCI who were responsible for providing medical care to Plaintiff during the relevant time period, *i.e.* October 7, 2011, through October 2013.

[16] Contrary to Defendants' contention in their briefs that the medical claim is properly analyzed under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971) (ECF Nos. 22-4 at 12-18 and 28-2 at 6), the doctors and nurses at MCCI who were responsible for providing medical care to Plaintiff were acting under color of state law for the purposes of 42 U.S.C. § 1983.  *See West v. Atkins,* 487 U.S. 42, 55-56 (1988) (holding that a physician under contract with the state to provide medical services to inmates is acting under color of state law for purposes of § 1983 when undertaking his duties in treating an inmate, as "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State . . . Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody"); *Johnson v. Stempler,* 373 F.App'x 151, 153 n.1 (3d Cir. 2010) ("[P]rivate prison doctors working under contract with the government act 'under color of state law' for purposes of § 1983.").

19

This Court further finds that Plaintiff adequately pleads a § 1983 medical care claim against the County based on Warden Elwood's failure to act.  At this early stage of the proceeding, and in the absence of full briefing on the question of which county official has final policymaking authority under New Jersey law with respect to the conditions provided to MCCI inmates and with respect to monitoring CCS's compliance with its contractual obligations, this Court will not at this time find as a matter of law that Warden Elwood was not a policymaker for Monmouth County with respect to the failure to treat Plaintiff's blindness.  *See Hill v. Borough of Kutztown,* 455 F.3d 225, 245 (3d Cir. 2006) ("In order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy *in the particular area* of municipal business in question, and (2) whether the official's authority to make policy in that area is *final and unreviewable.*") (emphasis in original) (citations omitted). Accordingly, this Court finds that the Amended Complaint, when supplemented by Plaintiff's letter, adequately pleads a § 1983 medical care claim against Monmouth County.[17]  *See Connick*

---

[17] Defendants raise several additional arguments in their briefs which are meritless and do not require extended discussion. First, Defendants argue that Monmouth County, Warden Elwood and Corrections Officer Dixon are protected by Eleventh Amendment immunity and they are not "persons" under § 1983.  These arguments fail because Monmouth County is a local government entity.  "States are protected by the Eleventh Amendment while municipalities are not."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989); *see also Printz v. United States*, 521 U.S. 898, 931 n.15 (1997) (noting that Eleventh Amendment jurisprudence distinguishes between a State and a local governmental entity, since the Eleventh Amendment only bars suits against States).  Because official capacity suits represent another way of pleading an action against an entity of which an officer is an agent, the Court explained in *Monell* that "our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name."  *Monell,* 436 U.S. at 691 n.55.

*v. Thompson,* 131 S.Ct. 1350, 1359 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126 (1988) ("If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose."); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986) ("If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.") (plurality opinion) (footnote omitted); *McGreevy v. Stroup,* 413

---

Defendants also argue that the § 1983 claims should be dismissed on the ground of qualified immunity. Qualified immunity shields officials from suit if their conduct "d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Consonery v. Pelzer*, C.A. No. 13-17338, ___ F.App'x ___, 2014 WL 892896 (3d Cir. Mar. 7, 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Generally, the relevant issue of law is whether the right that the defendant is alleged to have violated was "clearly established" at the time the defendant acted. *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). To be clearly established, "[t]he contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court set forth the framework for analyzing claims of deliberate indifference to serious medical needs in 1976, *see Estelle v. Gamble*, 429 U.S. 97 (1976), and outlined the standard for a failure to protect claim in 1994, *see Farmer v. Brennan*, 511 U.S. 825 (1994). These standards were clearly established in 2011, when Plaintiff was incarcerated at MCCI. Because *Estelle* and *Farmer* were clearly established law when Plaintiff was incarcerated at MCCI, Defendants are not entitled to qualified immunity.

Finally, CCS argues in its motion that the Amended Complaint should be dismissed because Plaintiff has not asserted facts showing that a custom or policy of CCS caused Plaintiff's injury. This argument is without merit. Plaintiff did not sue CCS in the Complaint or the Amended Complaint.

F.3d 359, 367-68 (3d Cir. 2005) ("The Supreme Court's decision in *Pembaur* makes clear that an official with policymaking authority can create official policy, even by rendering a single decision.")

D.      Appointment of Counsel for Plaintiff

In Plaintiff's opposition to Defendants' motions, he repeatedly asks this Court to appoint counsel to represent him in this action.   (ECF Nos. 27 at 4, 30 at 1-2, 31 at 1.)   Once a court finds that an indigent party's case has arguable merit, in deciding to appoint counsel, the court should "consider a number of additional factors including: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses."   *Cuevas v. United States*, 422 F.App'x. 142, 145 (3d Cir. 2011) (citing *Tabron v. Grace*, 6 F.3d 147, 155-57 (3d Cir. 1993)).   In his letters, Plaintiff asserts that he unsuccessfully attempted to subpoena the video of the October 7, 2011, incident, the logbook, the photographs, records, and incident report, but he "really do[esn]'t know how to do it."   (ECF No. 29 at 1.)   He further states:   "My claim has a lot of merit[] and evidence of what happened to me.   I need help with counsel or the necessary assistance to plead my claim and get all the evidence for my discovery and guide me in the right direction on this claim."   (ECF No. 30 at 2.)   Given the need for discovery and factual development, the likelihood that Plaintiff will need an expert witness, and Plaintiff's inability to pursue investigation of his claims because he is no longer incarcerated at MCCI, this Court finds that the appointment of *pro bono* counsel for Plaintiff, pursuant to 28

U.S.C. § 1915(e)(1), is necessary.   This Court will appoint counsel, subject to Plaintiff's filing an application to proceed *in forma pauperis*,[18] and this Court's determination that he is unable to afford counsel within the meaning of 28 U.S.C. § 1915(e)(1).

### III.   CONCLUSION

For the reasons set forth in this Opinion, this Court denies the motion filed by CCS to dismiss or, alternatively, for summary judgment without prejudice; denies the motion to dismiss or, alternatively, for summary judgment filed by the Monmouth County Defendants without prejudice; after screening pursuant to 28 U.S.C. § 1915A(a), dismisses the 42 U.S.C. § 1983 failure to protect claim without prejudice against Monmouth County, Brian Elwood, Classification Officer John Doe, Dr. John Doe, Nurse Jane Doe, and Nurse John Doe; allows the § 1983 failure to protect claim to proceed past dismissal against Christopher Dixon; dismisses the § 1983 inadequate medical care claim without prejudice against Christopher Dixon and Classification Officer John Doe; allows the § 1983 failure to protect claim to proceed past dismissal against Monmouth County, Brian Elwood, Dr. John Doe, Nurse Jane Doe, and Nurse John Doe; and appoints counsel for Plaintiff, subject to his filing, and this Court's granting, his application to proceed *in forma pauperis, see* 28 U.S.C. 1915(e)(1).


/s/ Freda L. Wolfson
**FREDA L. WOLFSON, U.S.D.J.**


DATED:   March 25, 2014

---

[18] This Court will direct the Clerk to send Plaintiff an application to proceed *in forma pauperis.* Plaintiff should answer all questions on the form, attach his prison account statement covering the period of time he has been incarcerated at FCI Fairton, and mail these documents to the Clerk.